Edna Schulman v. Commissioner.
Schulman v. Commissioner
Docket No. 38940.
United States Tax Court
1953 Tax Ct. Memo LEXIS 280; 12 T.C.M. (CCH) 448; T.C.M. (RIA) 53143; April 24, 1953
*280 Marvin K. Collie, Esq., 11th Floor, Esperson Building, Houston, Tex., and R. P. Bushman, Esq., for the petitioner. George H. Seefeld, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent has determined deficiencies in income tax as follows: Year
Deficiency
1946
$12,246.10
1947
10,151.53
The first issue to be decided is whether petitioner, her son, Alfred Schulman, and the Billy Schulman trust were bona fide partners in the partnership known as the Bryan Amusement Company during 1946 and 1947. The second issue is whether a tax deficiency paid by petitioner in 1947 as a transferee of the Bryan Amusement Company, Inc., which was dissolved in 1944, constituted a long-term capital loss or an ordinary loss. Findings of Fact Some of the facts are stipulated and are so found. The petitioner, Edna Schulman, is an individual residing in Bryan, Texas. The returns for the years before us were filed with the collector of internal revenue for the first district of Texas. Petitioner's husband and his father were in the theater business in Bryan since 1926. They were first partners and later incorporated *281 the business under the name of the Bryan Amusement Company, Inc. Petitioner, after the decease of her husband in 1935 and his father in 1936, acquired 250 shares, half of the outstanding shares, in the company, and her sister-in-law, Mrs. Leah Lazarus, acquired the other 250 shares. From 1936 until January 1, 1944, petitioner and Mrs. Lazarus constituted the principal officers and the managers of the company. Prior to 1944 petitioner was the only stockholder living in Bryan, and consequently a large part of the managerial duties of the business fell upon her. Alfreed Schulman, one of petitioner's sons, was 15 years old, and Billy, another son, was 9 years old at the time of their father's death. Alfred had worked around the theaters from the time that he was 12. He served as relief cashier, relief doorman, and relief usher. After his father's death Alfred continued in this work and began assuming greater responsibility in the business. Later, while Alfred was at college and at law school in Austin, Texas, 100 miles away from Bryan, he actively participated in the management and the operation of the business. Regularly he returned to Bryan on weekends. He wrote business letters, *282 participated in business conferences, helped establish policy and assisted his mother in booking films. Alfred was admitted to the practice of law in Texas in 1942. Shortly thereafter he entered the Army. While in the Army he participated in the business as much as possible. He corresponded with his mother and had frequent long distance telephone conversations with her concerning business matters. When petitioner had any major business problems she always discussed them with Alfred prior to taking any action upon them. She relied on Alfred's judgment in business matters. In 1943 petitioner informed Alfred that she planned to give him and his brother 62 1/2 shares each of the 250 shares she held in the Bryan Amusement Company, Inc. Alfred had suggested to his mother that the business form be changed from a corporation to a partnership. In the latter part of December, 1943, a proposed partnership agreement was discussed in a conference at Houston, Texas. Petitioner, Mrs. Lazarus, their attorneys, and Alfred attended this conference. On January 3, 1944, petitioner gave, unconditionally, 62 1/2 shares of her stock in the company to Alfred individually, and also 62 1/2 shares of stock *283 to the Billy Schulman trust. The trust agreement was executed by petitioner, as settlor, and Alfred, as trustee, on January 3, 1944. Billy was then 18 years old. In the trust agreement petitioner waived and relinquished any and all rights to the ownership, enjoyment or use of the income and principal of the trust. The gift was irrevocable. The trust was to terminate in 1956, or sooner within the discretion of the trustee, but not before the beneficiary reached majority. The trustee was authorized to invest the trust funds or property in a partnership, and the trustee could become a partner in the partnership. The trustee's compensation was 2 per cent of the net income of the trust. Petitioner reserved the right to make additional contributions to the trust. Provision was also made for the appointment of successor trustees if they were needed. Petitioner wanted to make the gift outright to Billy but it was made in trust because Billy was then a minor. Petitioner's gift was made in this form upon the advice of counsel. On January 3, 1944, a written partnership agreement was executed by petitioner, Alfred and Mrs. Lazarus. Alfred signed for himself and also as trustee for the Billy *284 Schulman trust, Mrs. Lazarus for herself and also as trustee for two trusts. [1] The agreement, in part, is as follows: "ARTICLE I." "The parties hereto agree to become and remain partners in the business or businesses of carrying on and conducting * * * a motion picture * * * business * * *" "ARTICLE II." "The name of the partnership shall be 'BRYAN AMUSEMENT COMPANY'" * * *
"ARTICLE IV." "The partnership capital shall be and is contributed by the partners in cash and property in the following amounts and percentages: "Partners
Amount
Percentages
Leah
25
Edna
25
Alfred
12 1/2
Linda Trustee
12 1/2
Henry Trustee
12 1/2
Billy Trustee
12 1/2
100%"
The agreement also provided that the profits and losses would be distributed in the same ratio as the capital contributions. In general, the provisions in the agreement gave the ultimate control of the partnership to the petitioner and Mrs. Lazarus. The Bryan Amusement Company, Inc., was dissolved on January 6, 1944. The liquidating trustees of the corporation transferred the real estate and *285 personal property owned by the corporation to the partnership. Alfred went overseas with the armed forces shortly after January 3, 1944, and was discharged in October 1945. After his discharge he resumed his studies and received a Master of Laws Degree in June 1946. Alfred divided his time between Bryan and Houston, where he was starting the practice of law. Bryan was within easy driving distance from Houston. During this time he actively participated in the management of the partnership business and it had first call on his time. Attendance to the business was important because the business was his primary source of income. At times he managed the theaters, signed checks, employed and dismissed personnel, made reports and deposits, and handled correspondence on behalf of the partnership. He also booked movies for the partnership. Alfred was recognized as a partner and owner of the business by the fire insurance underwriters who insured the partnership property. The Unemployment Insurance Account was carried in the name of "Al Schulman, et al., d/b/a Bryan Amusement Company." Pursuant to Texas statutes his name was included with the partners and the partnership name in the county *286 records. The Social Security Account registration of the partnership was in the name of petitioner, Mrs. Lazarus, and Alfred Schulman. During the years before us the partnership had approximately 21 employees. There were cashiers, doormen, ushers, motion picture projector operators, porters and a secretary. During this period Billy was assistant manager and at times had charge of the supervision of the employees in the theaters. He was also in charge of the popcorn and candy concessions and the poster advertising. In 1947 Billy attended the University of Texas at Austin where he studied business administration. During the summer and on weekends he returned to Bryan to work in the theaters. Alfred as trustee kept a record of trust receipts and disbursements, and a separate bank account for the trust. In working for the business, Alfred acted not only for himself as an individual but also as a trustee for the Billy Schulman trust. The profits of the partnership for the years 1946 and 1947 were distributed currently to petitioner, Alfred and the trust in the ratio of their capital contributions to the partnership. The books of the company reflected the fact that Alfred was a partner, *287 individually and as trustee. Petitioner, Alfred and the trust reported and paid income tax on their partnership income for 1946 and 1947. There was a real intention on the part of petitioner, Alfred and the trust to join together in the agreement of January 3, 1944, to carry on the business as partners; the parties acted in good faith and with a valid business purpose. Opinion The primary question in this case is whether the petitioner, her son Alfred, and the Billy Schulman trust were bona fide partners in the conduct of the Bryan Amusement Company. The evidence clearly shows that they were partners. The question that arises because one of the named partners was a trust is not new or novel. We have held in past decisions that trusts may be partners, and our decision here is in harmonious accord with such decisions as ; ; , and (decided March 19, 1953). The parties executed a written partnership agreement. Each of them made a capital contribution to the partnership. In the theater business capital *288 is an important income-producing item. The fact that the capital of Alfred and the trust originated as a gift from the petitioner does not vitiate the partnership where the gifts were complete and the petitioner never thereafter exercised dominion or control over the gifts. . The partners agreed to participate in the profits and losses from the business. The profits and losses were to be distributed in the ratio of their capital contributions. The profits for the years 1946 and 1947 were actually distributed in accordance with their written agreement. The testimony of the parties was that they intended to be partners and that they were partners. The general public and other businesses which served and supplied the Bryan Amusement Company considered the parties to be partners. The petitioner and her sons participated in the day to day operation of the theaters. Alfred's ability as a business man contributed to the success of the enterprise. There is no evidence of mala fides but on the contrary all of the testimony and the evidence indicates tha the parties acted in good faith with a business purpose in the conduct of their business. *289 We have here a situation where a wife took over her husband's prosperous business after his death, and later, for the benefit of their sons and their combined financial security and to give them an interest in that business, formed a real business partnership with them. Petitioner and Alfred, as an individual and as a trustee, intended the business to be a partnership. They owned and operated it as a partnership; they shared in the profits as partners. We can only conclude that petitioner, Alfred and the Billy Schulman trust were partners in the Bryan Amusement Company. The shares of partnership income distributable to Alfred and the trust in 1946 and 1947 were not includible in petitioner's income. The petitioner created a second issue when she alleged error in respondent's holding that a tax deficiency paid by her as transferee of the Bryan Amusement Company, Inc., constituted a long-term capital loss rather than an ordinary loss. She has not supported this allegation of error, either with evidence at the hearing or with argument on brief. We can only conclude that she has abandoned her position and therefore the respondent must be sustained on this issue. Decision will be entered *290 under Rule 50. Footnotes
1. The present proceding does not involve the Lazarus side of the partnership.↩